UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **No. 05-261** |
| **JOSE ALEMAN** | **SECTION: I** |

ORDER AND REASONS

Before the Court is the motion of defendant, Jose Aleman, to suppress all evidence obtained by law enforcement officials by means of an automobile search conducted on August 4, 2005. A suppression hearing was held today, January 12, 2006, to consider evidence and testimony of a witness involved in the traffic stop and subsequent search of the vehicle driven by defendant. After considering the evidence and testimony, the arguments of the parties, and the law, for the following reasons, **IT IS ORDERED** that defendant's motion to suppress is **DENIED.**

*Background*

On August 4, 2005, at approximately 12:57 a.m., Louisiana State Trooper Chris Anderson observed a 2001 Ford pick-up truck driving erratically on Interstate 12 in St. Tammany Parish,

Louisiana.  The driver of the truck was defendant, Jose Aleman, who was traveling eastbound at approximately seventy (70) miles per hour when he was stopped by Anderson for improper lane usage.

According to Anderson, Aleman acted more nervous than the average individual during the traffic stop.  Anderson engaged Aleman in conversation for the stated purpose of determining whether he was impaired and whether he should continue driving.  Aleman's answers were inconsistent.  For example, although Aleman stated that he was traveling to Florida to work on an oil rig, there were ten (10) large bags of horse feed and two (2) bales of hay in the bed of his pick-up truck.  Aleman also stated that he would be working on the rig for two (2) weeks but Anderson noticed only two (2) shirts and a small duffle bag in the cab of the truck.  Aleman also did not know his destination in Florida.

Anderson also testified that he observed three (3) cell phones on the driver's side visor and a global positioning system (GPS) unit on the dashboard.  Anderson inquired if defendant had anything illegal in the truck and specifically asked if he was transporting cocaine.  Defendant answered no to both questions.  However, Anderson noted that Aleman chuckled nervously before responding to the question regarding cocaine.  Anderson then left Aleman standing near the rear bumper of the truck to run a check on his driver's license.

While checking Aleman's criminal history from inside his police car, Anderson observed Aleman continuously turning and looking down into the truck's bed. Based on his training and experience, Anderson concluded that Aleman may be involved in criminal activity.[1] Anderson then called for backup and completed his portion of a consent to search form. Upon returning to the truck, Anderson once again asked Aleman if he had anything illegal, including weapons, marijuana, and cocaine, in the truck and defendant answered no.

Subsequently, Anderson asked for consent to search Aleman's pick-up truck and presented and read a consent form to the defendant. Aleman signed the written consent to search form which authorized Anderson to search the Ford truck "and its contents, which are owned or controlled by [the defendant] and remove any items the Louisiana Office of State Police deems pertinent to their investigation . . . . No promise, threat, or coercion of any kind has been made against [the defendant] by the Louisiana Office of State Police and [the defendant has] been informed by [Anderson] that [the defendant] may refuse to consent

---

[1] Anderson testified that backup arrived while he was still in his car. One of the officers, Ryan Midkiff, asked defendant some additional questions. Anderson testified that Midkiff specifically asked defendant about the horse feed in the truck's bed and Aleman appeared increasingly nervous and stated that he had a pony despite the fact the feed was for an adult horse. Moreover, Anderson testified that Aleman's answers revealed little knowledge about raising horses.
    When Midkiff questioned Aleman, Anderson had already called for backup and had begun to fill out the consent to search form. This additional information, while corroborative of Anderson's suspicions, could not figure into his reasonable suspicion calculus and, accordingly, the Court does not consider it in reviewing the reasonableness of defendant's detention.

to any search and that [the defendant] may revoke [his] consent to search at any time."

Anderson and officers Ryan Midkiff and Chad Guidry proceeded to search the truck.  Midkiff found two (2) fifty (50) or fifty-five (55) pound bags of dog food lying under the several bags of horse feed.  Anderson testified that while moving one of the bags of dog food, Midkiff noticed that the contents of the bag did not feel like dog food.  Upon cutting one of the bags open, Midkiff discovered sixteen (16) individual kilogram packages of a substance suspected to be cocaine bundled together with red tape.  A total of thirty-four (34) bags of a substance which tested positive for cocaine, weighing forty-one (41) kilograms, were found within the two (2) bags of dog food.  Aleman was then arrested, read his Miranda rights, and transported to Troop L in Covington, Louisiana for processing.

Aleman argues that the search and seizure was in violation of the fourth and fourteenth amendments to the U.S. Constitution because:  1) there was no probable cause to stop and search his vehicle; 2) the stop was improper and unreasonable in scope; 3) there was no reasonable suspicion that criminal activity had occurred when the stop was effected; 4) the continued questioning of defendant was unreasonable and exceeded the time necessary to complete the traffic stop; and 5) the search exceeded the scope

4

of defendant's consent.

### *Law and Analysis*

**I.  The Traffic Stop**

Defendant challenges both the traffic stop and the subsequent search of his vehicle.  The fourth amendment requires that every search and seizure by a government agent be reasonable.  U.S. Const. amend IV.  A traffic stop constitutes a seizure and such a seizure, i.e., an investigative detention, is governed by the reasonable suspicion standard set forth in Terry v. Ohio rather than the familiar probable cause standard.  392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); see United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005); see also Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 3150, 82 L. Ed. 2d 317 (1984).  The propriety of an investigative detention, commonly called a Terry stop, is analyzed using a two-part inquiry:  1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was reasonably related to the circumstances that justified the stop. United States v. Brigham, 382 F.3d 500, 506 (5th Cir. 2004).

As noted above, a traffic stop is justified at its inception if the officer's action was premised on reasonable suspicion. Reasonable suspicion entails "'some minimal level of objective justification' for making a stop," that is, the officer "must be able to articulate something more than an 'inchoate or

unparticularized suspicion or "hunch."'" <u>United States v. Sokolow</u>, 490 U.S. 1, 7, 109 S. Ct. 1581, 1585, 104 L. Ed. 2d 1 (1989)(citing <u>Terry v. Ohio</u>, 392 U.S. 1, 88 S. Ct. 1868, and <u>INS v. Delgado</u>, 466 U.S. 210, 104 S. Ct. 1758, 80 L. Ed. 2d 247 (1984)).  The articulable suspicion required for a <u>Terry</u> stop is less demanding than the level of suspicion required for probable cause.  <u>Id.</u>  A finding of reasonable suspicion is judged after considering the totality of the circumstances.  <u>United States v. Grant</u>, 349 F.3d 192, 197 (5th Cir. 2003).

Considering the totality of the circumstances, the Court finds that Anderson was reasonable both in making the traffic stop and in detaining Aleman to fully investigate the nature of the defendant's travels and whether he was competent to proceed.  Initially, the traffic stop was effected because of a moving violation.  The propriety of the traffic stop is clear and defendant's contention that probable cause was required is without merit.

After checking Aleman's criminal history, the continued detention of defendant was proper for the reasons articulated by Anderson.  This is not a case where the officer should have released defendant after the computer check came back negative.  Anderson testified that based on his experience and training, he believed Aleman was engaged in drug trafficking or criminal activity.  Anderson articulated the following circumstances which

supported his belief: (1) that Aleman acted more nervous than the average citizen, (2) that the location where Aleman started his trip is a source location for drugs, (3) that Interstate 12 is a known drug corridor, (4) that Aleman's stated purpose did not correspond with the contents of his vehicle which were visible to Anderson, (5) that Aleman was hesitant to answer questions and his answers appeared to be inconsistent and deceptive, (6) that Aleman had three cell phones and a GPS unit in the truck, and (7) that Aleman continuously turned and directed his gaze to the truck's bed while Anderson watched from his police car.

The Court concludes that Anderson had reasonable suspicion to make the traffic stop.[2] The Court further concludes that after making the stop, the duration of defendant's detention was reasonable and, therefore, no fourth amendment violation occurred. While defendant was stopped due to his improper lane usage, Anderson questioned the defendant to determine if he was impaired or if he was in a condition to resume his travels. The

---

[2] Defendant argues that the stop "was more of a drug courier profile stop once the officer viewed the vehicle's license plate and thus was improper at its inception." (Rec. Doc. No. 17). Defendant cites United States v. Smith, 799 F.2d 704 (11th Cir. 1986), for the proposition that evidence should be suppressed if an automobile stop is based on inadequate drug courier profiling. Id. at 708. Defendant has presented no testimony which supports his contention that the traffic stop in this case was not based on a legitimate traffic violation. In Smith, the district court expressly found that no traffic violation had occurred. Id. at 709.

Defendant does not suggest that Anderson did not observe a traffic violation prior to making the stop. Therefore, the Court finds that the traffic stop was based on a traffic violation and that it was not pretextual.

line of questioning was undisputably related to the initial purpose of the traffic stop, and defendant presented no evidence from which this Court could conclude that the several minutes it took the officer to assess the situation and run a criminal background check was unreasonable.  See United States v. Roberson, 6 F.3d 1088, 1092-93 (5th Cir. 1993).

Defendant further contends that Anderson's continued questioning was unreasonable and exceeded the time necessary to complete the traffic stop.  "Once the purpose of a valid traffic stop has been completed and an officer's initial suspicions have been verified or dispelled, the detention must end unless there is additional reasonable suspicion supported by articulable facts."  United States v. Gonzalez, 328 F.3d 755, 758 (5th Cir. 2003).  To whatever extent defendant's seizure was prolonged beyond the scope of the initial traffic stop, the Court finds that Anderson had reasonable suspicion to justify Aleman's continued detention.  See United States v. Jones, 234 F. 3d 234, 241 (5th Cir. 2000)(noting that reasonable suspicion is judged by the totality of the circumstances and "the collective knowledge and experience of the officer[] involved").  Considering the answers given by Aleman to Anderson's questions in concert with defendant's behavior, *e.g.*, his nervousness, his inconsistent and ill-informed answers, and his continuous, furtive glances into the bed of the truck, as well as the circumstances of Aleman's

travel, Anderson concluded that criminal activity may be afoot. Based on the officer's knowledge and experience and in light of the totality of the circumstances, the Court finds that there were several articulable facts which gave rise to reasonable suspicion that Aleman may have been involved in drug trafficking. Therefore, the Court concludes that Aleman's continued detention did not violate the fourth amendment.

**II.  The Search**

At this point in a traffic stop, the Court would normally need to consider whether "circumstances might warrant a finding of probable cause for the search," Roberson, 6 F.3d at 1092, however, as explained below, the Court need not reach the issue of probable cause.  A search conducted after acquiring consent relieves law enforcement from their obligation of obtaining a search warrant or establishing probable cause. Schneckloth v. Bustamante, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854 (1973).  Consent must be voluntary and it is judged from a totality of the circumstances. Id. at 248.  The government bears the burden of proving that consent was freely and voluntarily given.  United States. v. D'Allerman, 712 F.2d 100, 103 (5th Cir. 1983).  The Fifth Circuit employs a six-factor test to determine whether consent was voluntarily given. United States v. Jones, 234 F.3d 234, 242 (5th Cir. 2000)(citing United States v. Shabazz, 993 F.2d 431, 438 (5th Cir. 1993)).  "Those factors are:

9

1) the voluntariness of the defendant's custodial status; 2) the presence of coercive police procedures; 3) the extent and level of the defendant's cooperation with the police; 4) the defendant's awareness of his right to refuse consent; 5) the defendant's education and intelligence; and 6) the defendant's belief that no incriminating evidence will be found."  Id.

The Court need not apply the six factors because Aleman does not contest the fact that he voluntarily granted the officer consent to search his vehicle.  Aleman solely argues that the search of the bags of dog food exceeded the scope of his consent. Aleman contends that he granted limited consent to search the inside of the vehicle alone.

The consent form signed by Aleman included consent to search the vehicle's contents.  Aleman does not argue that he orally urged the officers to stop the search once they began to inspect the truck bed or once they reached the bags of dog food found there.  Moreover, because the defendant did not place an explicit limitation on the search of the vehicle, the officers were objectively reasonable to conclude that the general consent given included consent to search any containers which might hold drugs. See Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 114 L. Ed. 2d 297 (1991).

As the Fifth Circuit explained in United States v. Mendoza-Gonzalez:

10

> When the government relies upon consent as the basis for a warrantless search, "they have no more authority than they have apparently been given by the consent." Wayne R. LaFave, *Search and Seizure* § 8.1(c) (3d ed. 1996 & Supp. 2003). Under the Fourth Amendment, "[t]he standard for measuring the scope of a suspect's consent . . . is that of 'objective' reasonableness--what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Florida v. Jimeno, 500 U.S. 248, 251, 111 S. Ct. 1801, 1803-04, 114 L. Ed. 2d 297 (1991). "The question is not to be determined on the basis of the subjective intentions of the consenting party or the subjective interpretation of the searching officer." LaFave, *Search & Seizure* § 8.1. Although objective reasonableness is a question of law, the factual circumstances are highly relevant when determining what the reasonable person would have believed to be the outer bounds of the consent that was given.

318 F.3d 663, 666-67 (5th Cir. 2003)(emphasis in original). In United States v. Rich, the Fifth Circuit held that any words, including a request to "look in" a vehicle, which objectively communicate to a reasonable individual that the officer is seeking permission to examine the vehicle and its contents satisfies the fourth amendment. 992 F.2d 502, 506-07 (5th Cir. 1993).

In the instant case, the officer did more than obtain consent to "look in" Aleman's vehicle. The officer obtained written consent to search both the vehicle and its contents. When Midkiff discovered the bags of dog food underneath the horse feed, he felt that the bag's contents did not feel like dog food. Under the circumstances, the Court finds that it was objectively reasonable to open the bag of dog food which was believed to

11

contain drugs after obtaining consent to search the vehicle and its contents.  Accordingly,

For the above and foregoing reasons, **IT IS ORDERED** that the motion to suppress of defendant, Jose Aleman, is **DENIED.**

New Orleans, Louisiana, this ___12th___ day of January, 2006.

```
                                    _____
                                           LANCE M. AFRICK
                                    UNITED STATES DISTRICT JUDGE
```